Isador B. Leon, Appellee, v. Mutual Benefit Health and Accident Association, Appellant.

Gen. No. 42,304.

Opinion filed May 23, 1944.

Ross, Berchem & Schwantes, of Chicago, for appellant.

Branko M. Steiner and Bernard H. Sokol, both of Chicago, for appellee.

Mr. Justice Sullivan delivered the opinion of the court.

Plaintiff, Isador B. Leon, brought this action against defendant, Mutual Benefit Health and Accident Association, to recover indemnities under an accident and health insurance policy because of his alleged disability resulting from sickness. The jury returned a verdict finding the issues for defendant. Upon plaintiff's motion judgment for $322.50 was entered in his favor notwithstanding the verdict. Defendant appeals.

Plaintiff permitted his policy to lapse on June 1, 1940 for nonpayment of premium. The policy was reinstated on July 1, 1940 by the payment on said date of a quarterly premium for the period from July 1, 1940 to October 1, 1940. The provisions of the policy under which plaintiff claims he is entitled to recover are as follows:

"Illness Indemnities
Confining Illness Benefits for Life

*Part J.*

The Association will pay, for one day or more, at the rate of Seventy-five ($75.00) Dollars per month for the first fifteen days and at the rate of One Hundred and Fifty ($150.00) Dollars per month thereafter for disability resulting from disease, the cause of which originates more than thirty days after the effective date of this policy, and which confines the Insured continuously within doors and requires regular visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time."

Defendant asserts as one of its defenses to plaintiff's claim that Standard Provision 3 of the policy precludes recovery by him. This provision is as follows:

"3. If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of the premium by the Association or by any of its duly authorized agents shall reinstate the policy, *but only to cover* accidental injury thereafter sustained and *such sickness as may begin more than ten days after the date of such acceptance.*" (Italics ours.)

Section 357 (3C) of the Illinois Insurance Code (par. 969, ch. 73, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 66.1032]) requires the inclusion of Standard Provision 3 in every health and accident insurance policy issued in this State and the same standard provision is required in health and accident policies issued in practically every State in this country and in Canada.

Defendant urges several grounds for reversal but we only deem it necessary to consider its contention that "plaintiff's claim was not covered by the policy" because "Standard Provision Three of the policy excluded coverage of sickness occurring within ten days after reinstatement of the policy" and "the exclusion by Standard Provision Three of 'such sickness' as begins within ten days following reinstatement of the policy refers to the date that 'such sickness' commenced, not to the date of commencement of disability therefrom."

Plaintiff insists that his claim is "compensable under the policy" and that "the ten-day period after the word 'sickness' used in Standard Provision Three of the defendant's policy has reference to the kind of compensable sickness provided for under Part . . . J . . . of the same policy which necessarily confines the insured continuously within doors and requires regular visits therein by a legally qualified physician."

Thus the question presented for our determination is whether the stipulation in Standard Provision 3 that the policy shall cover only "such sickness as may begin more than ten days after the date" of its reinstatement means that, even though the disability commenced

more than ten days thereafter, it is excluded from coverage if it was caused by sickness that began within ten days after the reinstatement of the policy or that the disability itself must begin within ten days after the reinstatement of the policy to be excluded from coverage.

On September 23, 1940 plaintiff mailed to defendant his application for "Sickness Benefits" on a form of proof of loss furnished by the insurance company. In said proof of loss plaintiff certified that both his sickness and disability began on July 4, 1940. Dr. Isadore M. Trace, his attending physician, certified that on July 5, 1940 he diagnosed plaintiff's sickness as inflammation of the gall bladder, for which he commenced to treat him on that date. His employer certified that plaintiff "was disabled from July 3, 1940 until September 24, 1940."

On October 22, 1940 plaintiff's attorney wrote defendant a letter requesting "the necessary blanks to prepare amended proofs of claim" because "Mr. Leon was mistaken as to certain information which he gave you in the original proofs of claim." Defendant's reply thereto stated in effect that plaintiff's proof of loss in addition to other information at hand clearly demonstrated that his policy excluded coverage for the disability claimed and that "additional proof would be of no value."

Plaintiff testified that he was 54 years old; that he was a salesman employed by the Banner Coal Company; that on July 4, 1940 he felt "a little pressing" over his chest and decided to see his doctor; that he first saw his physician, Dr. Trace, on July 5, 1940 because he had a pressing pain "under his stomach and chest;" that the doctor "thought it was gall bladder" and gave him medicine on that day and again on July 9, 1940, which relieved his pain; that he saw Dr. Trace several times thereafter until July 19, 1940, when he went to bed; that between July 5, 1940 and July 19,

1940 he continued at his usual work, calling on trade and seeing his customers; that he stayed in bed from July 19, 1940 until the end of July, when he consulted Dr. Carl Meyer, who operated on him for a gall bladder ailment in Grant hospital on August 6, 1940; that after he went home from the hospital he stayed in bed for about three weeks; and that he remained at home until September 23, 1940, when he resumed his employment.

The only evidence introduced by defendant was plaintiff's proof of loss heretofore referred to, which showed that both his sickness and his disability had their inception within ten days after the reinstatement of his policy.

In our opinion the meaning of Standard Provision 3 is so clear and unmistakable that it is not open to construction. It states in simple and readily understandable language that the policy shall cover only *"such sickness* as may begin more than ten days after the date"* of its reinstatement. While, according to plaintiff's evidence, his disability commenced more than ten days after the reinstatement of his policy, the sickness that caused it admittedly began less than ten days after his policy was reinstated and therefore it must be held that such resultant disability is excluded from coverage. In so far as we have been able to ascertain no court of review in this state has had occasion heretofore to consider or apply Standard Provision 3 and we think it is fair to assume that the reason its plain meaning has not previously been questioned is that it was so clearly expressed that it was generally understood that the provision meant just what it said.

*Clark v. Mutual Benefit Health & Accident Ass'n* (La. App.), 146 So. 497, is the only case that plaintiff has cited or been able to find in any jurisdiction in this country that supports his position that his disability, having occurred more than ten days after the reinstatement of his policy, is compensable, even though the sickness which caused it began within such ten-day

period. In the *Clark* case the court determined that it was necessary to consider Standard Provision 3 in connection with Part K of the policy, which was identical with Part J of the policy in the instant case, to arrive at a proper construction of the language "only to cover . . . . such sickness as may begin more than ten days after the date" of reinstatement and concluded that "the ten-day period after the word 'sickness' used in paragraph 3, has reference to the beginning of the confinement of the kind provided for under Part K, which necessarily confines the insured continuously within doors and requires regular visits therein by a legally qualified physician, and which disease necessitates total disability and total loss of time."

The decision in the *Clark* case is contrary to the decisions of all other courts of review in the State of Louisiana, where Standard Provision 3 has been considered and applied, and it is conceded that said provision has not been similarly construed by a court of review in any other jurisdiction in this country.

Part K of the policy in the *Clark* case provided, as does Part J in the policy involved herein, that the coverage is "for disability resulting from disease . . . which confines the Insured continuously within doors and requires regular visits therein by a legally qualified physician; provided said disease necessitates total disability and total loss of time." It will be noted that there is a further provision in Part K of the policy in that case and Part J of the policy in this case immediately preceding that above quoted, which restricts the coverage to "disability resulting from disease, the cause of which originates more than thirty days after the effective date of this policy." We do not think that it could be seriously contended that the condition last above quoted did not exclude coverage for disability, no matter when it occurred, if it was caused by disease which originated within thirty days after the original issuance of the policy. While it is true that said con-

dition applies only to the restriction of coverage for a period of thirty days after the issuance of the policy, it is analogous to the condition in Standard Provision 3, which restricts coverage for a ten-day period after the reinstatement of the policy. We think that coverage is just as clearly restricted by Standard Provision 3 to disability caused by sickness which originates more than ten days after the reinstatement of the policy as it is under Part J to "disability resulting from disease, the cause of which originates more than thirty days" after the original issuance of the policy. The reason for the exclusion of coverage as to disabilities that result from sickness or disease which begins within thirty days after the issuance of a policy or within ten days after the reinstatement of a policy is quite obvious. It is to prevent fraud in the procurement of policies or in the reinstatement thereof by persons who feel the imminency of illness that will in all likelihood result in disability as defined in the policy.

The *Clark* case was decided by a district court of appeal of Louisiana on March 7, 1933. In *Thomas v. First Nat. Life, Health & Accident Ins. Co.* (La. App.), 157 So. 409, decided November 14, 1934 by a court of appeal of another district in Louisiana, a health and accident policy was involved that contained the following Standard Provision 3: "The insured shall not be entitled to sick or accident benefits when premiums are in arrears two Mondays or more and the subsequent payment of such full arrears shall not entitle the assured to benefits for sickness or accident occurring or existing during the week following such payment of arrears." It will be noted that the intent and general effect of said provision was identical with Standard Provision 3 of the policy in the case at bar, except that the noncoverage period following the reinstatement was one week instead of ten days. There the court said at p. 410:

"We are given no reason for holding the said provision inoperative. The purpose of such a stipulation is very evident. It is to prevent an insured, who has allowed his policy to become suspended and who may feel that illness is impending, from rushing in to pay his overdue installments, so that, by the immediate reinstatement of the protection of the policy, he may secure the weekly benefits provided for. It is contemplated by the company that an impending illness will not make itself manifest so much as a full week in advance of the time at which disability may result and that, therefore, if payment of arrears is made at least a week before disability commences, any payment made was probably made in good faith and not in contemplation of an already manifested illness.

"Such a stipulation is reasonable, and we find that similar ones have been judicially determined to be enforceable." (Citing cases.)

In *Williams v. Continental Life Ins. Co. of St. Louis, Mo.* (La. App.), 149 So. 150, decided on June 15, 1933 by still another district court of appeal of Louisiana, Standard Provision 3 of the policy there in question was identical with that in the instant case and it constituted the sole defense of the insurance company to the claim of the insured. In that case the court said at p. 150:

". . . the only question for determination is when plaintiff's sickness began. The policy lapsed for nonpayment of premium on November 1, 1931, and was reinstated on November 7, 1931, by the acceptance of the monthly premium by defendant, and, under the above-quoted provision of the policy, defendant was not liable for sick benefits unless the sickness began more than ten days after November 7, 1931. The doctor in his certificate says the sickness began three or four days before November 21, 1931. The plaintiff testified in answer to questions propounded by his attorney that

his sickness began exactly two weeks before he called in the doctor on November 21, which would make the date of the beginning of his sickness on the very day that he was reinstated. This is the only evidence on this point in the record, and is, we think, binding on the plaintiff, and clearly takes his claim out of the provisions of the policy requiring the payment of sick benefits. His sickness began within less than ten days after the policy was reinstated, and he cannot recover.''

To the same effect are *Freedman v. Mutual Benefit Health & Accident Ass'n* (Mo.), 119 S. W. (2d) 1017; *Business Men's Accident Ass'n of America v. Arrington* (Tex. Civ. App.), 7 S. W. (2d) 157; *Taylor v. Latin-American Life & Casualty Ins. Co.*, 152 La. 740, 94 So. 375; *Sincer v. Latin American Ins. Co.* (La. App.), 122 So. 909.

Since it clearly appears from plaintiff's own evidence and the evidence of his attending physician that his sickness began within ten days after the policy was reinstated, he is precluded from recovery under the plain terms of Standard Provision 3 of the policy and defendant's motion for a directed verdict made at the close of plaintiff's evidence should have been allowed. However, since its motion for a directed verdict was not allowed either at the close of plaintiff's evidence or at the close of all the evidence, defendant was entitled to have judgment entered on the jury's verdict in its favor.

For the reasons stated herein the judgment of the municipal court of Chicago in favor of plaintiff notwithstanding the verdict of the jury is reversed and the cause is remanded with directions to enter judgment on the verdict in favor of defendant.

*Judgment reversed and cause remanded with directions.*

FRIEND, P. J., and SCANLAN, J., concur.